JOHN M. DONALDSON AND HENRY J. MEIER v. THE DETROIT MUSEUM OF ART.

*Contracts—Competitive designs for building—Award.*

Defendant issued a circular inviting designs for the first section of a public art gallery which it proposed to erect, giving a full description of the grounds and proposed building, and character of the designs it desired submitted, which were to be passed upon by a competent board of experts, and the author of the one accepted was to be employed to complete a set of plans, with details, at the usual rate of compensation, of the American Architects' Association, and specified prizes were to be awarded for the two designs deemed next highest in merit, but the board was not to be obliged to make any award if none of the designs were deemed worthy. Plaintiffs submitted a design, which was not deemed meritorious by the board, and was not accepted by defendant, and brought suit for their services in preparing it, and the Court hold that upon the undisputed facts they cannot recover.

Error to Wayne. (Reilly, J.) Argued May 22, 1888. Decided October 19, 1888.

*Assumpsit.* Plaintiffs bring error. Affirmed. The facts are stated in the opinion.

*James H. Brewster,* for appellants, contended:

1. Defendant's proposal, as set forth in its circular, when accepted and acted upon by plaintiffs, became a unilateral contract, as in the case of an offer of a reward, acted upon by informer or finder; citing *Pierson v. Morch,* 82 N. Y. 503; *Williams v. Carwardine,* 4 Barn. & Adolp. 621; *Lancaster v. Walsh,* 4 Mees. & W. 16; and it was not necessary to the validity of the contract that mutuality should exist from the first; citing Bishop, Cont. (1887) § 87; Hare, Cont. chap. 15, "Unilateral Contracts."

2. Under this contract the designs were to be submitted to a *competent* board of experts, whose opinion was to be conclusive; citing *Saveroool v. Farwell,* 17 Mich. 308; which opinion should be preceded by discussion and interchange of views and could not be formed from the *separate* opinion of each member; citing *Rex v. Inhabitants of Marlow,* 2 East, 244, 248, 249; *Battye v. Grefley,* 8 Id. 319, 327; *McCortle v. Bates,* 29 Ohio St. 419, 422; *Leonard v. Darlington,* 6 Cal. 123; *Hascall v. University,* 8 Barb. 174, 182.

3. The board of experts should meet by itself, not with defendant's trustees; citing *Cammeyer v. United Churches,* 2 Sandf. Ch. (N. Y.) 187, 228, 229.

4. The universal rule, as to arbitration by several, is that (whether or not a majority may make an award) all must meet, and together consider the subject; citing *Ackley v. Finch,* 7 Cow. 290, 293; *Yates v. Russell,* 17 Johns. 461, 469; *Short v. Pratt,* 6 Mass. 496; *Maynard v. Frederick,* 7 Cush. 251; How. Stat. § 8480; and, unless the statute or submission otherwise provides, the general rule requires all the arbitrators to join in the award; citing Morse, Arb. & Awd. 162; *Stose v. Heissler,* 120 Ill. 433 (11 N. E. Rep. 161); *Sherman v. Cobb,* 10 Atl. Rep. 59; *Oakley v. Anderson,* 93 N. C. 108.

5. In construing contracts the intention of the parties is to be deduced from the language employed; citing *Plano Mfg. Co. v. Ellis,* 68 Mich. 101; Bishop, Cont. (1887) §§ 380, 381; and the words are to be taken in their strict sense against the party using them, where one party makes the writing; citing Id. § 414; and the best construction is secured by viewing the subject-matter as the mass of mankind would view it, for it may be safely assumed that such was the aspect in which the parties viewed it; citing *Nav. Co. v. Moore,* 2 Whart. 477, 491.

72 MICH. 3.

**6.** Where the language of a promisor may be understood in more senses than one, it is to be interpreted in the sense in which he had reason to suppose it was understood by the promisee; citing *Hoffman v. Ins. Co.*, 32 N. Y. 405, 413; *Ins. Co. v. Mund*, 102 Penn. St. 89, 94; *Potter v. Berthelet*, 20 Fed. Rep. 240.

**7.** Courts are always reluctant to give a construction to a contract or a law that shall constitute a person a judge in his own case; citing *Janvrin v. Exeter*, 48 N. H. 83, 85.

**8.** A breach of the contract is disclosed, in that the defendant's trustees kept the design about a month, and then asked the advice of three experts as to awarding the second and third prizes, who did not meet as a board, and only one gave a positive opinion, and the trustees themselves awarded the first premium, of which none of the experts approved, and the author of which had not fulfilled the conditions imposed upon him by the notice, and it does not appear that they awarded the second premium in accordance with the advice of the experts.

**9.** Plaintiffs are certainly entitled to the cost of preparing designs as requested by defendant.

**10.** Where there has been a refusal to submit to an agreed arbitration, the party aggrieved may recover his costs and expenses of the party so refusing; citing *Pond v. Harris*, 113 Mass. 114, 121; *Blaisdell v. Blaisdell*, 14 N. H 78, 81; *Miller v. Canal Co.*, 53 Barb. 590; *Day v. Bank*, 13 Vt. 97; *Hawley v. Hodge*, 7 Id. 237, and the same principle is applied in *Bulkley v. U. S.*, 19 Wall. 37, 49.

**11.** The question of the performance of a contract is for the jury; citing *Jaquith v. Hudson*, 5 Mich. 123, 132; *Phelps v. Whitaker*, 37 Id. 72, 78; *McKay v. Evans*, 48 Id. 597, 602.

**12.** The meaning of the contract is for the court, but the jury must determine whether the necessary acts have been done; citing *Medical Institution v. Harding*, 11 Cush. 285; *Stecker v. Smith*, 46 Mich. 14; *Chamberlain v. Jackson*, 44 Id. 320; *McMullen v. MacKenzie*, 2 G. Greene (Iowa), 369.

**13.** The question of reasonable time, put in issue by the pleadings, was for the jury; citing *Haywood v. Harmon*, 17 Ill. 480; *Henkle v. Smith*, 21 Id. 241.

*Dickinson, Thurber & Stevenson,* for defendant, contended for the conclusions stated in the opinion, citing no authorities.

SHERWOOD, C. J.  The defendant is a corporation in Detroit, whose affairs are managed by a board of eight trustees.

The plaintiffs are architects, and bring suit to recover the value of their services in preparing plans and designs, to compete for certain premiums offered, as claimed by defendant, with a view to securing suitable plans for the erection of a building to be used by it as an art museum.

The declaration contains a special count in *assumpsit,* and was accompanied with the following bill of items of the plaintiffs' demand, viz.:

"The following is a bill of particulars of the plaintiffs' demand in this cause, and for the recovery of which this action is brought, to wit:

"1. Services by the plaintiffs as architects from November 20, 1886, to February 1, 1887, in preparing for the defendant, and at its request, preliminary studies and estimates of a proposed building, namely, a section of a proposed art gallery, $400.

"2. Professional services as architects rendered by the plaintiffs from November 20, 1886, to February 1, 1887, to the defendant, at the defendant's request, in accordance with a certain circular or notice of the defendant, dated November 20, 1886, in preparing designs in accordance with the terms of said notice or circular, for the building proposed by the defendant to be erected at the proposed cost of $40,000; preparing and submitting description of the same; procuring and submitting estimate of cost from a responsible party; materials used in preparing said designs,—one per cent. of the cost of the proposed building for which said designs were prepared, viz., $400.

The defendant pleaded the general issue, and the cause was tried in the Wayne circuit before a jury, and a verdict was directed for the defendant by the circuit judge. The plaintiffs ask for a review of the case in this Court.

From the record it appears the defendant's secretary prepared a circular notice, giving the location of the site for the building it proposed to erect, and a general

description of the building desired, and inviting architects to submit designs for such building.    The circular proposed by the secretary was approved by a majority of the trustees of the defendant corporation, and the secretary was authorized by them to send the circular to architects applying for it.

The notice contains the following statements, clauses, and provisions:

### "DETROIT MUSEUM OF ART.

#### "NOTICE TO ARCHITECTS.

"The trustees of the Detroit Museum of Art purpose the immediate erection of the first section of a public art gallery, and hereby invite designs for the same."

The next four paragraphs of the circular describe with great particularity the lot selected as the site for the building, and the streets upon which it fronts, and its size, in what direction it lies from the center of the city, and the distance of the line of houses on the adjoining property from Jefferson avenue, and state that it is desirable to conform to the same.    The circular then proceeds:

#### "THE BUILDING.

"The amount of the appropriation for the building now to be erected is $40,000.    It is desired to have it occupy the Jefferson avenue frontage, due regard being had to preserving proper space between it and any present or future buildings on the adjoining lot, but without unnecessary waste of ground.    Approximately the building will be 90 to 100 feet long, and 40 to 50 feet wide. The building is to consist of a cellar, ground floor, and second story, the latter to be lighted by skylights alone, for purposes of picture galleries.    The ground floor will contain the vestibule, hall for casts and statuary, an office for the secretary, and the necessary retiring rooms.    The building will be of fire-proof construction.    The walls will be of Philadelphia pressed brick, with stone or terra-cotta dressings, or may be altogether of stone.    Preference will be given to dignified simplicity and purity of style rather than too elaborate ornamentation and novelty

of design.   As the lot will ultimately be covered with buildings, the south or rear side of this structure may be absolutely plain.

### "THE DESIGNS.

"The drawings to be submitted in competition will be sketches only, and will consist of the following:   Plan of each floor, $\frac{1}{4}$ inch scale.   One sectional drawing, $\frac{1}{8}$ inch scale.   Front and one side elevation, $\frac{1}{8}$ inch scale.   Ground plan of the lot suggesting future extensions, $\frac{1}{16}$ inch scale. Drawings to be in ink; no brush work or color to be used, but stone trimmings, if any, to be shown by etching. They will be submitted by motto, and will be passed on by a competent board of experts.   Every design must be accompanied by a description of the same, and also by an estimate of cost from a responsible party.   The designs will be publicly exhibited, and those receiving premiums will remain the property of the museum.   All designs must be submitted before February 1, 1887.   The examining board will not be bound to make any award, if none of the designs shall be deemed worthy.

### "PREMIUMS.

"The author of the accepted design will be employed to complete a full set of plans, with details, at the usual rate of compensation of the American Architects' Association.   Two additional prizes, of $300 and $200 respectively will be awarded for the two designs deemed next highest in merit.   For any additional particulars, address,

"COLLINS B. HUBBARD, Secretary,

"48 Moffat Building, Detroit, Mich.

"*Detroit, Mich. Nov.* 20, 1886."

It appears from the record that the plaintiffs, in the fall of 1886, received from the defendant a circular same as the foregoing, and, relying upon the propositions therein contained, prepared a set of competitive plans called "Preliminary Sketches," in accordance with the terms of the circular, and submitted them to the defendant, and designated them by the motto, "*Lampas Veritatis.*" They were accompanied with an estimate of cost, and were so submitted within the period named in the circular.   It appears there were about 50 other competitors for the prizes offered.

The trustees, as is shown by the record, selected four persons to act as a committee, to examine plans submitted for the proposed building, for the purpose of awarding the first, second, and third prizes. The persons thus selected, and who acted and made reports, were Gordon W. Lloyd, E. E. Myers, and Mortimer L. Smith, of Detroit, and Prof. H. S. Frieze, of Ann Arbor. It further appears from the testimony that all of these gentlemen examined all the plans submitted, to the number of fifty-three, and that of the plaintiffs was among those examined, and they considered its merits as compared with the others, and but one of the experts reported in favor of the plan submitted by the plaintiffs. The others all rejected it.

The committee of experts, or board as they are termed in the circular, did not all meet together when the plans were examined (several of them did, however, examine them together); nor was there any report made of their examination in which all united, but each made his separate report, and the three parties presenting plans which severally received the recommendation of all or a majority of the experts as the most meritorious were awarded the prizes offered in the circular, and which were accordingly paid by the trustees. These facts are substantially undisputed.

The contract to erect the building was let to James Balfour of Hamilton, Ontario, who received the first prize for his plan.

The defendant insists that it substantially complied with the proposition contained in the circular, and in good faith paid over the money for prizes to those presenting the three most meritorious plans as ascertained by the board of experts.

The circuit judge took the defendant's view of the case, and directed the verdict accordingly.

The plaintiffs claim that the trustees ignored the opinions of the experts, and decided the whole matter for themselves; that the defendant did not, within a reasonable time after the designs of the plaintiffs were submitted to it, procure them to be passed upon by a competent board of experts, according to the intent and meaning of the circular; that the opinion of the experts should have been the opinion of the board, and the report should have been one made by the board, and not the several opinions of the individual experts; that the matter to be submitted to them was to be passed upon by the experts, as a board; that the experts should have consulted together, and an interchange of views should have been obtained, before any final conclusion was reached or report made; and that such is the proper construction of the circular, and what was in the minds of the trustees when the same was formulated.

I do not think that either of the positions of the plaintiffs' counsel can be maintained. The drawings to be placed in competition were to be passed upon by a board of experts. There was no promise contained in the circular that the trustees would accept any one of them, even if found meritorious by the trustees; but if one was accepted the author was to be employed by the defendant to complete a full set of plans, with details, with rate of compensation therefor established by the American Architects' Association. One of them was accepted, and the next two most meritorious, as found by the experts, were paid the premiums promised.

The experts were not to determine the kind or character of the building the trustees were to erect, but to present plans of such as were thought worthy to be erected by persons who had knowledge and experience in building and planning buildings. The object of the trustees was to secure the best plan, and they took this

course to get before them the result of the largest experience among architects upon this subject, and they offered the prizes mentioned in the notice for the purpose of securing the greatest number from men of the largest experience, and that they might be properly advised upon the subject they promised in the circular that they would submit such plans to architects, and take their judgment upon the plans presented.

The number of architects, whose judgment they should so take, was not mentioned; they were, however, to be selected by themselves, and how and in what manner the examination of the plans presented was to be made by them, or how or in what manner the architects should make their determination, was not mentioned in the circular. Whether they should make such examination separately, or together, was at the discretion of the trustees. There may have been reasons why the trustees should want a separate examination and report. Certainly the competitors cannot find fault in this regard if the architects were competent, and this is conceded so far as three of them are concerned; and in relation to the fourth it was for the plaintiffs to show it, if he was not competent, under the circumstances of this case.

The trustees had a right, after taking the opinion of these experts, to ignore their action and conclusions, and erect such a building as they chose. They could not, however, if the experts deemed three of the plans presented by the competitors meritorious, avoid the payment of the prizes offered. There may be some doubt whether the reports made can be said to show any three of the plans meritorious. I do not care, however, now to discuss that point, as it is not made in the case by counsel.

. The view I have taken of the case renders it unnecessary to consider the question of reasonable time in submitting the plans of the competitors to the experts. If the

plaintiffs' plan was not regarded as meritorious by them, it is entirely immaterial when it was submitted. The experts did not act as arbitrators. They were not called upon to pass upon the rights of parties, but simply upon the comparative merits of several plans for the defendant's building. The plaintiffs had nothing to do with their appointment or with their number. The law pertaining to arbitration has no application to their mode of proceeding, or to the action taken by them.

Upon no view that I have been able to take of the case on the facts undisputed were the plaintiffs entitled to recover, and the circuit judge committed no error in so ruling.

The judgment will be affirmed.

The other Justices concurred.